'The Court took time to advise, and afterwards Chancellor Rutledge delivered the decree of the Court.
The complainants bill states that she married the hite . . . A. B. defendants testator, in London, in May, 1772; ihat they arrived here in August following ; — that in the February ensuing, she was delivered of a daughter. That from the time of her marriage to the birth of her daughter, they lived together a? man and wife, though not so happily as could have been wished. That in May, 1773, she went to. visit some of her friends at Beaufort, at the express desire of her husband, and was afterwards desirous of returning to him; but that he refused to receive her, and continued so to do till his death in March, 1796.— That some negotiations were set on foot for allowing her a separate maintenance, but a quarrel ensuing they were broken off, and never afterwards renewed. The reasons why nothing further was done are particularly detailed in the bill. Complainant therefore prays a suitable allowance, during the time she lived separate from her husband. To this bill defendant pleaded the limitation act, which upon argument was overruled. A strong doubt arising whether the demand of complainant was not altogether of a personal nature, and by her not making appli *206 cation during.iho lift ofbr husband, she bad n.>t slept so long' on her rights as to lose: her title to relief, the court de - spfe¿ to have that point argued and precedents sought for before they would order defendant to answer.
The question has been very fully discussed by counsel on both sides. For the complainant it was contended that the husband was bound to maintain and provide for his wife, as well duringhis life as after his death. That he was under a moral obligation to do so; that it was a part of the marriage contract, and the court would compel him to it. That this suit was not ex delicto as for a tort; but ex contractu for a breach of that contract; and therefore that a suit for alimony would survive against executors as well as for any other contract; hut even admitting it did not generally survive, it ought under the peculiar circumstances of this case. For the defendant it was insisted, that suits for aliinony or separate maintenance do not survive. It was admitted that the court may allow separate maintenance during the life of the husband Nevertheless he was only liable where there .was a divorce, a mensa et thoro ; and as incidental to a . decree for that purpose. That the causes of divorce w.ere purely personal, and cannot be decreed after the death of one of the parties ; that complainant forfeited or lost her claim by not pm-suing it in the life of her husband; and that where a party with a full knowledge of his rights, sleeps over them, the court will consider it as an abandonment or re~ linquishment of them. With respect to the power of this court to allow a separate maintenance, where a proper case is made out, that is not to be questioned. It has been exercised and must continue to be exercised, bécausé a wife would be otherwise without "redress, there being no other court in this country competent to it.
This question must be decided on general principles and not on the particular circum stances of this case. It is plainly and simply whether a wife who applies for alimony or a separate maintenance ought not to bring suit against her husband in his lifetime 1 The very idea of -ali *207 mony or a separate maintenance, admits that the husband is alive, and refuses to perform the contract which the law imposes on him of maintaining and supporting his wife. A suit must therefore be instituted against him personally, charging him with a viclation of his contract, and stating particularly ill usage on his part as a ground for the application for a separate maintenance. He is then called upon by the process of the court, in which the suit is commenced, to answer the charge. Upon his answer and the proof adduced, depends the decree that is to be pronounced. Hence it. is evident, that the suit must be brought against him personally, because in the Ecclesiastical Court, there must be a divorce a mensa et thoro, previous to the allowance of alimony, and a sentence of divorce cannot be given in any case where either husband or wife is dead. A decree cannot be made in this court against a defendant where his misconduct is the charge for the foundation of such decree, unless he is brought into court, to answer the charge, except indeed he absconds, in which case, the court will make some provision for the wife, till he returns. That the suit for alimony is for a tort and altogether personal, is further illustrated by its being brought against the husband for ill usage, for depriving the wife of her conjugal rights, such ■ as driving her from bed and board, and refusing to support her. What acts can be more tortious than those? None'; not even beating her. Such conduct of the husband, being proved, terminates in-a decree in the Ecclesiastical Court, for a divorce a mensa et thoro, and an allowance of alimony ; or in this court a separate maintenance, during their separation only; for this court has no right to decree a perpetual separation. A very strong ground for the court not sustaining this suit is, that no precedent has been produced of a similar case :• whence it may be very fairly and justly inferred, that no suit of this kind has ever been brought from a thorough conviction that it could not be maintained ; for if such a suit had been instituted, some determination on it would certainly have been found in *208 the books. The singularity of such a case would unques» tionably have attracted the attention of all the writers on tjjjs su.i <ject, and the diligent researches of complainants counsel would undoubtedly have brought it to light. — It was therefore with that view that the court desired to have the question fully discussed. When differences arise between husband and wife, when their mutual resentments must be considered of so serious a nature as to induce a separation, it is reasonable to suppose that she would institute her suit with promptness, and prosecute it with vigor ; but if she remains wholly passive during his life, and makes no application for a separate maintenance till several years after his death, the court will consider such conduct as an abandonment or relinquishment of her rights. In almost all cases the law has fixed the period within which suits of various kinds shall be brought, and where the law is silent; the courts reasoning from analogy, have limited the time for prosecuting suits of a similar nature. In cases of tort, the law has fixed twelve months for bringing an action at law. In a case like the present,, which is also a tort, if the wife does not commence her suit during her husbands life, the court would not interpose its aid for the best of reasons, because the offender, (if he was one) is no more. ’ He is in his grave ; he is incapable ofausweringto the charge which is made against him. The violation of contract in the case under consideration, is of thirty years standing. Both the parties have lived in the state withih a few miles of each other, during the whole of that period, until his death, and no steps taken by complainant to obtain redress for the injury, except at the commencement of these differences % some conversations were then had on the subject, and proposals made, which were broken off; the whole business was then relinquished, and nearly five years after her husband’s death this suit was instituted against his executor to be allowed a separate maintenance for upwards of 20 years back: That complainant has not been without a maintcnace, although not from her husband, appears from *209 her own bill; for within two years after their separation, her father died and left 1600/. in the hands of trustees, to be applied to her sole use, which it is to be presumed she has uniformly received the profits of; and since her husband’s death she has received a very liberal allowance for dower out of his estate. To allow of such stale demands as the present, after so great a length of time has elapsed since the original cause of suit, and so many years after the death of a party, might be attended with the greatest inconvenience and most dangerous consequences. It would be putting it in the power of the living to accuse the dead of the grossest misconduct, and it is more than probable that an executor might be wholly unacquainted with circumstances, and therefore incompetent to repel the charges or make a proper defence; whereas if the husband was alive, it is possible he might be able to assign good and substantial reasons for his conduct, and rebut the accusation by the testimony of witnesses. No one ought to be condemned unheard. Audi alteram partem is the language of reason^ of common sense, and of the law: but how can the person accused be mow brought into this court to make his defence. Expedit Meipublicce ut sit finis litium, is a maxim that has prevailed in this court in all times. Laches and neglect are always discountenanced, and a Court of Equity which is never active in giving relief against conscience or public convenience, always refuses its aid to stale demands, where the party has slept upon his rights, and acquiesced for a great length of time. Upon the whole of the case, the court are unanimously of opinion that no precedent being shown wherein the court has given relief in a case similar to the present, they will not make one. That the demand made'by complainant for an allowance is altogether of a personal nature ; that it did not arise ex contractu, but wholly ex delicto; and therefore does not survive' against the executor.
The bill must be dismissed.